UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCHOOL BOARD OF LEE COUNTY,
FLORIDA,

        Plaintiff,

v.                                  Case No:   2:15-cv-730-FtM-99MRM

M.P., a minor by and through his parents,
E.P. and S.P., individually and as parents
and next friends of M.P.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**[1]

This cause comes before the Court on the Defendants' Motion to Dismiss for Lack of

Subject Matter Jurisdiction and Failure to State a Claim (Doc. 8) filed on January 26, 2016.

Plaintiff filed a response in opposition (Doc. 15) on February 9, 2016.  On March 7, 2016, the

Court entered an Order re-designating this case as a Track One Case.  (Doc. 19 at 1).  As a Track

One Case, the Motion to Dismiss was referred to the Undersigned for a Report and

Recommendation.  The Undersigned conducted a hearing and received oral argument on the

Motion to Dismiss on July 14, 2016.  This matter is ripe for consideration.  For the reasons set

forth below, the Undersigned respectfully **REPORTS** and **RECOMMENDS** that the Motion to

Dismiss is due to be **GRANTED**.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

I.     **Background**

A.  **Factual Allegations of the Complaint and Exhibits**

Plaintiff is the School Board of Lee County ("Plaintiff," "LCSB," or "School Board"). (Doc. 1 at ¶ 5).  Defendant M.P. is a sixteen (16) year old student receiving educational services in the Countywide Exceptional Child program of the School Board in Fort Myers, Florida.  (*Id.* at ¶ 7).  M.P. meets the eligibility criteria for Autism Spectrum Disorder and, according to the Complaint, is entitled to the protections of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA").  (*Id.* at ¶ 8).  The School Board alleges that "M.P. has been served and is currently receiving special education and related services in accordance with an individual education program ('IEP')."  (*Id.* at ¶ 9).  "Under his current and agreed[-]upon IEP, M.P. is being provided a free appropriate public education through a 'Hospital or Homebound' program, and receives services for language impairment, orthopedic impairment, and occupational therapy."  (*Id.*).  Defendants E.P. and S.P. are the parents and next friends of M.P. (*Id.* at ¶ 6).

The School Board brings this action to redress the alleged violation of its rights and responsibilities under the IDEA as a result of allegedly erroneous decisions of the Florida Division of Administrative Hearings ("DOAH").  (*Id.* at ¶¶ 1, 23-26, 38).  Specifically, the School Board seeks this Court's review of and declaratory judgment concerning two orders of an Administrative Law Judge ("ALJ") dated October 23, 2015 and November 17, 2015, attached as Exhibits A and B to the Complaint, respectively.  (*Id.*; Docs. 1-1, 1-2).  The orders were entered by the ALJ in connection with an administrative due process hearing request initiated by M.P. pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504" or "§ 504"), the

Americans with Disabilities Act, 42 U.S.C. § 1983, and the School Board's "Section 504 Notice

of Rights for Disabled Students and their Parents." (Doc. 1 at ¶ 11).

*1. The Section 504 Administrative Proceeding*

M.P. initiated the underlying administrative due process hearing request on or about

August 19, 2015.  (*Id.* at ¶ 11).[2]  On or about August 24, 2015, the School Board referred the

request for a § 504 due process hearing to DOAH.  (*Id.* at ¶ 17).  In the administrative

proceeding, M.P. alleged that the School Board denied him a free appropriate public education

("FAPE") and discriminated against him.  (*Id.* at ¶ 11).  Specifically, M.P. alleged that he was

subjected to bullying and harassment at Cypress Lake Middle School during April 2013.  (*Id.* at

¶ 12).  M.P. contended that "[a]s a result of this alleged bullying and harassment, . . . the School

Board has discriminated against him by not offering or providing the necessary supports or

services to M.P. and this has resulted in M.P. not having access to his public school peers and

remaining on hospital homebound."  (*Id.* at ¶ 13).  "M.P. further alleged that his education

service as a hospital-homebound student was the most restrictive setting and fails to ensure

adequate education progress related to M.P.'s educational needs related to social skill and his

right to attend public school."  (*Id.* at ¶ 14).

According to the School Board, M.P.'s § 504 due process hearing petition "did not

challenge the special education and related services under [M.P.'s] then-current IEP pursuant to

the IDEA."  (*Id.* at ¶ 16).  Rather, the § 504 hearing request "sought to order the School Board to

'develop a proper Section 504 plan or IEP or both and [sic] EP with appropriate services and

supports and accommodations' as well as declaratory relief as to money damages."  (*Id.* at ¶ 15

---

[2] Counsel advised during the July 14, 2016 motion hearing that the administrative proceeding has
been abated pending the outcome of the above-captioned litigation.  (Tr. at 9-10).

(alteration [sic] in original)).  The School Board alleges that in the administrative proceeding, "M.P. seeks relief in the form of a revised IEP and a change in educational placement under the IDEA."  (*Id.* at ¶ 42).

### 2.  The ALJ's October 23, 2015 Order

On or about October 2, 2015, the School Board moved to dismiss M.P.'s § 504 hearing request in the administrative proceeding, arguing that the petition failed to exhaust administrative remedies under the IDEA.  (*Id.* at ¶ 23).  In an order dated October 23, 2015, the ALJ denied the motion to dismiss, finding that the administrative proceeding was not a "civil action" within the meaning of 20 U.S.C. § 1415(l), the administrative exhaustion provision of the IDEA on which the School Board's motion relied.  (*Id.* at ¶ 24; *see also* Doc. 1-1 at 2).  This is the first of the two ALJ orders that the School Board challenges in this lawsuit.  (*Id.* at ¶ 1).

Section 1415(l) provides:

(l) Rule of construction

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that *before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(l) (emphasis added); (*see also* Doc. 1-1 at 2).

In denying the School Board's motion to dismiss, the ALJ reasoned:

The instant proceeding is not a *civil action* in a court, but rather, at Respondent's referral, a request for an impartial hearing at [DOAH].  The undersigned is unaware of any legal authority, and Respondent has not provided any, to support the contention that an administrative tribunal, here DOAH, is required to dismiss a 504 Complaint on the grounds that Petitioner must first exhaust his IDEA remedies. Thus, Respondent's Motion to Dismiss on said ground is denied.

([Doc. 1-1 at 2](#)) (emphasis added).

The School Board alleges, *inter alia*, that the ALJ's decision on this issue was erroneous and, as such, the School Board seeks review, declaratory judgment, reversal, and vacatur of the October 23, 2015 Order, as well as an award of costs.  ([Doc. 1 at ¶¶ 1](#), 47, 49-51, and Prayer for Relief at p. 9).  The Complaint alleges that "[b]ecause of M.P.'s failure to exhaust administrative remedies available under IDEA, the School Board is deprived of its right to exercise agency discretion and expertise on issues requiring such characteristics."  (*Id.* at ¶ 35).  The Complaint further alleges that the "[a]bsence of appropriate IDEA administrative exhaustion prevents the full development of technical issues and a factual record under the standards of IDEA prior to court review."  (*Id.*).  Additionally, the Complaint states that "[f]ailure to require exhaustion of IDEA's administrative remedies at this stage of proceedings causes the School Board irreparable harm by requiring the School Board to proceed to an unnecessary Section 504 hearing, expend scarce public resources, and results in irremediable loss for all parties."  (*Id.* at ¶ 37).

Count I of the Complaint asserts a claim for Declaratory Judgment.  (*Id.* at ¶¶ 40-47).  In that count, the School Board alleges in relevant part:

> Pursuant to the IDEA, [20 U.S.C. § 1415(l)](#), *litigants seeking relief* under the Constitution, the American's with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *which relief is also available under IDEA*, must first exhaust the administrative procedures under IDEA to the same extent as would be required had the action been brought under provisions of the IDEA.

(*Id.* at ¶41 (emphasis added)).  The School Board also alleges in Count I that "M.P. seeks relief in the form of a revised IEP and a change in educational placement under IDEA."  (*Id.* at ¶ 42). The School Board further alleges in Count I that "M.P. has not exhausted available administrative remedies with respect to his educational complaints under IDEA, including, but not limited to, M.P.'s parent's participation in procedural safeguards of [20 U.S.C. § 1415(b)](#)

(notice of complaint), 1415(e) (mediation), [and] 1415(f)(1)(B) (resolution meeting)." (Doc. 1 at ¶ 44). Count I asks the Court to "declare the rights and responsibilities of the parties to first exhaust IDEA administrative remedies prior to requiring a Section 504 hearing and require that M.P. comply with the exhaustion requirements of 20 U.S.C. § 1415(l) as a matter of law." (*Id.* ¶ 47).

Count II of the Complaint purports to assert a claim for "Erroneous Interpretation of Law." (*Id.* at ¶¶ 48-51). In Count II, the School Board alleges in pertinent part that "[t]he decision of the [ALJ] was erroneous as a matter of law because IDEA requires that litigants in an administrative proceeding must exhaust IDEA relief as a prerequisite to relief under any Federal statute." (*Id.* at ¶ 49). The School Board further complains that:

> [T]he administrative law judge failed to give the statutory language of the IDEA, the regulations promulgated thereunder, and implementing Florida regulations, their plain and ordinary meaning in construing Section 504 hearing requests as not qualifying for "civil action" and requiring the School Board to proceed to a hearing not contemplated by the legislature.

(*Id.* at ¶ 50).

The School Board also complains that the ALJ

> usurped the control of the local education agency under the IDEA to first address and offer a remedy to M.P.'s complaint at an IEP meeting, mediation, resolution session, or otherwise, in accordance with the requirements of the procedural safeguards of the IDEA prior to proceeding to a Section 504 hearing.

(*Id.* at ¶ 51).

### 3. *The ALJ's November 17, 2015 Order*

On or about October 7, 2015 – while the § 504 proceeding was pending – M.P. allegedly "submitted to the School Board a Hospital/Homebound Medical/Psychiatric Referral ('Referral') form prepared by" a physician. (*See* Doc. 1 at ¶ 18). According to the Complaint, "[t]he Referral certified that [M.P.] '. . . should be placed in this [Hospital/Homebound] most restrictive

environment' and that '[M.P.'s] severe social anxiety along [with] [A]sperger's disease makes regular school attendance impossible.'" (*Id.* (certain alterations in original)). "The Referral further recommended that '<u>full-time</u> Homebound services and <u>no</u> attendance at the school site' were required." (*Id.* at ¶ 19 (underlined typeface in original)). The Complaint alleges that "the physician estimated the length of time needed for such services from the [R]eferral of October 7, 2015 for a period of twelve (12) months." (*Id.*).

The School Board states that in response to the Referral, it "conducted an IEP team meeting including [M.P.'s] parent, E.P." (*Id.* at ¶ 20). Moreover, "[a]s a result of the IEP team meeting, an IEP was developed." (*Id.*). That IEP is effective from October 20, 2015 until October 7, 2016. (*Id.*). The IEP provided for M.P. to remain in the Hospital/Homebound program through the 2015-2016 school year. (*Id.*). The School Board alleges that "[t]he IEP team, including M.P.'s parent, considered the range of placement options available and agreed to the placement determination contained in the IEP." (*Id.* at ¶ 21). The School Board also alleges that it has acted in accordance with that IEP. (*Id.* at ¶ 22).

On or about November 6, 2015 – after the first motion to dismiss described *supra* was denied – the School Board filed a second motion to dismiss "based [on] M.P.'s parent's agreement to a new IEP that also required M.P. to receive services under the Hospital/Homebound model." (*Id.* at ¶ 25). As alleged in the Complaint, the School Board's second motion to dismiss argued that the new IEP "render[ed] M.P.['s] Section 504 hearing request moot by operation of the terms and conditions of the agreed[-]upon IEP." (*Id.*).

On or about November 17, 2015, the ALJ entered a written order perfunctorily denying the School Board's second motion to dismiss without any discussion, analysis, or citation to any

legal authority.  (*Id.* at ¶ 26; Doc. 1-2).  The ALJ's November 17, 2015 order is the second of the two ALJ orders placed at issue in the Complaint.  (Doc. 1 at ¶ 26).

The School Board alleges, *inter alia*, that the ALJ's order on the second motion to dismiss was also erroneous and, thus, the School Board seeks review, declaratory judgment, reversal, and vacatur of the October 23, 2015 Order, as well as an award of costs.  (Doc. 1 at ¶¶ 1, 46-47, 51, and Prayer for Relief at p. 9).  The School Board complains that "M.P.'s failure to first exhaust IDEA administrative remedies subjects the School Board to inconsistent and irreconcilable services requirements under IDEA and Section 504."  (*Id.* at ¶ 27).  Moreover, the School Board alleges that "M.P.'s provision of a Hospital/Homebound service delivery model, as proscribed by [the physician] and adopted by the IEP team, is diametrically opposed to the relief M.P. sought under Section 504" because "[a]ny variance in services under Section 504 would undermine and usurp the IEP Team's agreed[-]upon service model."  (*Id.* at ¶ 28).  The School Board also contends that "[b]y M.P.'s parent's agreement to an IEP during the pendency of Section 504 hearing proceedings, the issues raised in the hearing request were rendered moot by agreement."  (*Id.* at ¶ 29).[3]

Count I seeks declaratory judgment based, *inter alia*, on the allegation that "M.P.'s parent participated in an IEP meeting subsequent to requesting a hearing pursuant to Section 504 and

---

[3]  Based on the quoted allegations, the Undersigned notes that the Complaint tends to conflate (1) the School Board's administrative exhaustion allegations and the ALJ's October 23, 2015 order, on the one hand, with (2) the School Board's mootness allegations and the ALJ's November 17, 2015 order, on the other hand.  This is especially true in Count II.  It is, therefore, difficult to discern from the allegations of the Complaint whether the School Board's request for relief concerning the November 17 order is dependent upon its request for relief concerning the October 23 order, or whether the School Board seeks independent relief as to each order separately.  If the Court accepts the Undersigned's recommendation that the Motion to Dismiss be granted without prejudice and if the School Board amends the Complaint in an attempt to cure the deficiencies identified herein, the School Board should consider setting forth its claims as to each of the ALJ's orders in separate counts to alleviate this confusion.

agreed to an IEP that is contrary to the relief sought in the Section 504 hearing; thus mooting any request for relief under Section 504." (*Id.* at ¶ 43). The School Board also alleges in Count I that "[t]he [ALJ's] denial of the School Board's *motions* to dismiss is erroneous in that the School Board was deprived of the first opportunity to resolve M.P.'s complaints at an IEP meeting, mediation, resolution meeting, or otherwise." (*Id.* at ¶ 45). The School Board reiterates in Count I that "M.P.'s parent participated in a IEP meeting and agreed upon relief that is diametrically opposed to the relief sought in M.P.'s prior filed [sic] Section 504 hearing request." (*Id.* at ¶ 46). Thus, the School Board contends that it "is placed in an inconsistent position of potentially having to enforce separate IEP and Section 504 plans." (*Id.*).

It is not entirely clear to the Undersigned whether Count II encompasses a claim predicated on the ALJ's November 17, 2015 order. On its face, each substantive paragraph of Count II references "the decision" (singular) without explaining which of the two ALJ orders at issue is being referenced. (*See id.* at ¶¶ 49-51). Paragraph 49 of Count II clearly relates to the ALJ's October 23, 2015 decision regarding exhaustion of IDEA relief as a prerequisite to relief. (*Id.* at ¶ 49). Likewise, Paragraph 50 of Count II clearly relates to the ALJ's October 23, 2015 decision construing § 504 hearing requests as not qualifying as a "civil action." (*Id.* at ¶ 50). Thus, Paragraphs 49-50 do not facially relate to the ALJ's November 17, 2015 order. However, Paragraph 51 of Count II alleges that the ALJ's "decision" (again, singular) is erroneous as a matter of law because it "usurped control of the local education agency under the IDEA to *first address and offer a remedy to M.P.'s complaint at an IEP meeting, mediation, resolution session, or otherwise, in accordance with the requirements of the procedural safeguards of the IDEA prior to proceeding to a Section 504 hearing.*" (*Id.* at ¶ 51 (emphasis added)). This allegation in Count II is consistent with the allegation in Paragraph 36 that "[t]he [ALJ's] *Orders*

deliberately disregard and permit M.P. to circumvent agency procedures, and requires [sic] unnecessary judicial decision by failing to give the agency the first opportunity to correct any alleged error." (*Id.* at ¶ 36 (emphasis added)).  Because Paragraph 36 is incorporated by reference into Count II (*see id.* at ¶ 48) and because the allegations in Paragraph 51 are consistent with those in Paragraph 36, the Undersigned finds and recommends that Count II be deemed to encompass a claim that *both* the October 23, 2015 order and the November 17, 2015 order were erroneous for the same alleged reason.

### B.  Track One Designation

In their February 19, 2016 Case Management Report, the parties stipulated that "this case is suitable as a Track One case in that it is an action for review on an administrative record." (Doc. 18 at 1).  Based on that representation, the Undersigned entered an Order on March 7, 2016 directing the Clerk of Court to re-designate this action as a Track One case.  (Doc. 19 at 1). The Undersigned inquired during the July 14, 2016 hearing about the continuing propriety of the Track One designation in this case given the jurisdictional and other issues raised in Defendant's motion to dismiss.  (Doc. 29 at 10-12, 16).  Based on the Undersigned's discussion with the parties at the hearing and a review of the record, the Undersigned finds and recommends that the Track One re-designation pursuant to the parties' stipulation continues to be appropriate because the parties do not dispute that this case presents narrow legal issues, the resolution of which will turn upon a review of the administrative record and application of prevailing law.

### II.    Applicable Legal Standards

### A.  Lack of Subject-Matter Jurisdiction, Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) provides for dismissal of an action if the court lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When reviewing a motion to dismiss for lack of subject-

matter jurisdiction, the Court construes the allegations of the complaint in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974); *Cole v. United States*, 755 F.2d 873, 878 (11th Cir. 1985).

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint."  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citation omitted).  A facial attack on the complaint challenges jurisdiction based on the allegations in the complaint.  *See id.* (citation omitted).  Thus, a facial attack "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion."  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted).

A factual attack, on the other hand, "challenges 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'"  *Id.* (citation omitted).  In deciding a factual attack, "'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'"  *Id.* (citation omitted).

In this case, Defendants appear to raise a facial attack on the Court's subject-matter jurisdiction because they do not challenge the existence of jurisdiction based on matters outside the pleadings.  (*See* Doc. 8 at ¶¶ 11-26).

## B.  Failure to State a Claim, Fed R. Civ. P. 12(b)(6)

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces

does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the reviewing court must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff.  *See Iqbal*, 556 U.S. at 678.  This preferential standard of review, however, does not permit all pleadings adorned with facts to survive to the next stage of litigation.  The Supreme Court has been clear on this point – a district court should dismiss a claim where a party fails to plead facts that make the claim facially plausible.  *See Twombly*, 550 U.S. at 570.  A claim is facially plausible when the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678.  This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557).

Importantly, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint *is inapplicable to legal conclusions*." *Iqbal*, 556 U.S. at 678 (emphasis added); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").  "A district court may properly dismiss a complaint if it rests only on 'conclusory allegations, unwarranted factual deductions *or legal conclusions masquerading as facts*.'" *Magwood v. Secretary, Fla. Dep't*

*Corr.*, No. 15-10854, 2016 WL 3268699, at *2 (11th Cir. 2016) (emphasis added) (quoting

*Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

### III.    Discussion

#### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

Defendants argue that "[b]ecause MP has not filed a civil action and IDEA has no relief

available to remedy MP's discrimination claim, including his inability to return to a LCSB

educational setting, this Court lacks subject matter jurisdiction in the Section 504 administrative

procedure and lacks subject matter jurisdiction to resolve the Plaintiff's Federal Complaint."

(Doc. 8 at ¶ 15).  In doing so, Defendants rely primarily on the plain language of 20 U.S.C. §

1415(l), the administrative exhaustion provision of the IDEA.  (*Id.* at ¶ 12).

In response, the School Board accuses Defendants of attempting to cloud the

"straightforward" jurisdictional and pleading issues presented by "arguing the allegations of their

underlying administrative complaint . . . and the substantive merits of the School Board's

Complaint in this Court."  (Doc. 15 at 1-2).  The School Board concedes that it "bears the burden

of establishing subject matter jurisdiction by a preponderance of the evidence."  (*Id.* at 5 (citing

*Bryant v. Allyn Fin.*, 452 Fed. App'x 908, 910 (11th Cir. 2012); *McCormick v. Aderholt*, 293

F.3d 1254, 1257 (11th Cir. 2002))).  The School Board maintains, however, that "the IDEA . . .

confers jurisdiction on federal district courts of actions brought under the Procedural Safeguards

section of the Act without regard to the amount in controversy."  (*Id.* at 5-6 (citing 20 U.S.C. §

1415(i)(3)(A))).  Specifically, the School Board argues that it satisfies all of the requirements of

20 U.S.C. § 1415(i)(2)(A) sufficient to give rise to subject-matter jurisdiction.  (*See id.* at 6).

Further, the School Board also maintains that federal-question jurisdiction is appropriate in this

case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) "because this action involves the important federal question of the interplay between the IDEA and Section 504." (Doc. 15 at 6).

*1. Subject-Matter Jurisdiction Premised on the IDEA*

In evaluating Plaintiff's arguments, the Undersigned first finds that the School Board has not met its burden to show that subject-matter jurisdiction exists based on the IDEA. The Court looks to the language of §§ 1415(i)(3)(A) and 1415(i)(2)(A) of the IDEA, in that order. Section 1415(i)(3)(A) provides that "[t]he district courts of the United States shall have jurisdiction of actions *brought under this section* without regard to the amount in controversy." 20 U.S.C. § 1415(i)(3)(A) (emphasis added). In this case, the School Board purports to bring its claims under § 1415(i)(2)(A) of the IDEA. (*See* Doc. 1 at ¶¶ 2-3; Doc. 15 at 6). Section 1415(i)(2)(A) provides in pertinent part:

> [A]ny *party aggrieved* by the *findings and decision made under this subsection*, shall have the right to bring a *civil action* with respect to the *complaint presented pursuant to this section*, which action may be brought . . . in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A) (emphasis added). By its plain language, § 1415(i)(2)(A) requires that: (1) the School Board be "a party aggrieved;" (2) "by the findings and decision;" (3) "made under" § 1415(i). *See* 20 U.S.C. § 1415(i)(2)(A). If these requirements are met, then a party may (4) bring a "civil action;" (5) "with respect to the complaint presented" pursuant to § 1415. *See id.* In this instance, the School Board has not demonstrated that all of the discrete requirements of the statute are satisfied such that subject-matter jurisdiction can be said to attach to the School Board's claims under §§ 1415(i)(3)(A) and (i)(2)(A).

On this point, the Undersigned notes that the School Board is arguably "a party aggrieved" by the ALJ's adverse rulings on the School Board's two motions to dismiss. Further, the School Board is indisputably bringing the above-captioned civil action. Nevertheless, the

remaining requirements of the statute simply do not, by their plain meaning, fit this case despite the School Board's strenuous attempts in its Complaint and in its opposition brief to shoehorn them into fitting. (*See* Doc. 1 at ¶¶ 38-39; Doc. 15 at 6).

For example, the School Board has not met its burden of demonstrating that the ALJ's pre-hearing rulings on the motions to dismiss *in the § 504 proceeding* constitutes a "finding and decision" within the meaning of § 1415(i)(2)(A) *of the IDEA* or that such a ruling is "made under" subsection § 1415(i) *of the IDEA*. The IDEA and Section 504 are separate, distinct statutes, and the School Board cites no legal authority to support its position that § 1415(i)(2)(A) applies to pre-hearing rulings on dispositive motions in § 504 administrative proceedings.

Similarly, the School Board has not met its burden of demonstrating that either M.P.'s *Section 504* petition or the School Board's motions to dismiss in the *Section 504 proceeding* constitute a "complaint presented pursuant to [§ 1415]," within the meaning *of the IDEA*. Plaintiff has not cited any case law – and the Court has not found any – interpreting and applying § 1415(i)(2)(A) in the manner the School Board would have it apply here given the specific procedural posture of the underlying administrative proceedings. As such, the Undersigned finds that the requirements of 20 U.S.C. § 1415(i)(2)(A) of the IDEA are not met and, therefore, cannot find that subject-matter jurisdiction exists in this case based on §§ 1415(i)(2)(A) and (i)(3)(A) of the IDEA, as alleged by the School Board.

### 2. *Federal-Question Jurisdiction*

Federal-question jurisdiction is, however, a separate matter. *See Robert v. Cobb Cty. Sch. Dist.*, 279 Fed. App'x 798, 800 (11th Cir. 2008) (treating issues of federal-question jurisdiction and jurisdiction under the IDEA as distinct); *see also City of Chicago v. International College of Surgeons*, 522 U.S. 156, 179 n.4 (1997) (stating the "IDEA has its own jurisdictional provision,

so it does not concern [§] 1331 . . . .").  With regard to federal-question jurisdiction, Plaintiff's

Complaint invokes 28 U.S.C. §§ 1331 and 1343(a)(3), (4).  (*See* Doc. 1 at ¶ 2).

Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

"Under § 1331, federal courts have federal-question jurisdiction over suits 'in which a well-

pleaded complaint establishes either that federal law creates the cause of action or that the

plaintiff's right to relief necessarily depends on resolution of a substantial question of federal

law.'"  *Dinardo v. Palm Beach Cty. Cir. Ct. J.*, 199 Fed. App'x 731, 737 (11th Cir. 2006)

(quoting *Newton v. Capital Assurance Co.*, 245 F.3d 1306, 1308-09 (11th Cir. 2001)).

Moreover, the Eleventh Circuit has held that stating a claim under the IDEA "is sufficient to vest

the district court with jurisdiction under 28 U.S.C. § 1331."  *Robert*, 279 Fed. App'x at 800

(citing *Newton v. Capital Assurance Co., Inc.*, 245 F.3d 1306, 1308 (11th Cir. 2001)).

>    For its part, § 1343(a)(3) provides:
>
>    The district courts shall have original jurisdiction of any civil action *authorized by
>    law* to be commenced by any person . . . [t]o redress the deprivation, under color of
>    any State law, statute, ordinance, regulation, custom or usage, of any right, privilege
>    or immunity secured by the Constitution of the United States or by any Act of
>    Congress providing for equal rights of citizens or of all persons within the
>    jurisdiction of the United States.

28 U.S.C. § 1343(a)(3) (emphasis added).  Moreover, § 1343(a)(4) provides "[t]he district courts

shall have original jurisdiction of any civil action *authorized by law to be commenced* by any

person . . . to recover damages or to secure equitable or other relief under any Act of Congress

providing for the protection of civil rights, including the right to vote."  28 U.S.C. § 1343(a)(4)

(emphasis added).

By operation of §§ 1331 and 1343, therefore, if the School Board's Complaint states a

claim upon which relief can be granted under the IDEA and the IDEA authorizes the School

Board to bring this civil action, then federal-question jurisdiction will attach.  For the reasons set forth below, however, the Undersigned finds that the Complaint does not state a claim for which relief can be granted under the IDEA and that the School Board's claims are not authorized under the IDEA.  Accordingly, the Undersigned finds that federal-question jurisdiction does not exist.

Notably, the School Board argues in its opposition to the Motion to Dismiss that federal-question jurisdiction is appropriate "because this action involves the important federal question of the interplay between the IDEA and Section 504."  (Doc. 15 at 6).  Because the Undersigned finds below that the School Board fails to state a plausible claim under the IDEA and that the IDEA does not authorize the School Board's claims, the Undersigned also finds that the School Board has not sufficiently alleged that this action involves an important federal question concerning the interplay between the IDEA and Section 504.

Additionally, the Undersigned notes that the School Board has not argued that the Rehabilitation Act provides an independent basis for jurisdiction in this case.  Therefore, despite conclusory allegations in the Complaint that jurisdiction exists under the Rehabilitation Act (*see* Doc. 1 at ¶¶ 2-3 (citing 29 U.S.C. § 794)), the Undersigned finds that Plaintiff has not met its burden of demonstrating that jurisdiction exists on that basis.

### B.  Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

Upon a careful review of the Complaint, the parties' briefing, and the oral argument presented during the July 14, 2016 hearing, the Undersigned finds that the School Board's Complaint suffers from at least two fundamental defects that are fatal to the School Board's claims.

First, as explained in the jurisdictional analysis *supra*, the School Board has not demonstrated that the requirements of 20 U.S.C. §§ 1415(i)(2)(A) of the IDEA are satisfied. Although the Complaint contains conclusory allegations that these statutory provisions are satisfied and that the School Board's claims are "authorized" by § 1415(i)(2)(A) (*see* Doc. 1 at ¶¶ 2-3, 38-39), those allegations are legal conclusions that this Court is not obligated to accept as true for purposes of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6).  *See Iqbal*, 556 U.S. at 678.

It is undisputed that Section 1415(i)(2)(A) sets forth requirements that must be met in order to bring a claim under the IDEA.  20 U.S.C. §§ 1415(i)(2)(A).  As discussed *supra*, the School Board has not demonstrated that every requirement of the statute is, in fact, met in this case.  The School Board cites no legal authority that would support a conclusion that a cognizable IDEA claim can exist and survive dismissal under Fed. R. Civ. P. 12(b)(6) when the requirements of § 1415(i)(2)(A) are not met.  The Undersigned finds and recommends, therefore, that such a failure constitutes not only a failure of subject-matter jurisdiction, but also a failure to state a claim upon which relief can be granted under the IDEA.  This finding is applicable to the School Board's claims premised on both the ALJ's October 23, 2015 and November 17, 2015 orders.

Second, the School Board's claims concerning the ALJ's October 23, 2015 order on the failure-to-exhaust issue depend entirely on the allegation that the term "civil action," as that term is used in 20 U.S.C. § 1415(l), includes an administrative proceeding under § 504 of the Rehabilitation Act.  (*See* Doc. 1 at ¶¶ 41, 49-50; *see also id.* at ¶¶ 23-24, 27, 35-37, 44-45, 47, 51; *see also* Doc. 1-1 at 2).  The Undersigned finds that the School Board's allegations in that regard are legal conclusions couched as factual allegations.  (*See id.*).  As such, this Court is not

constrained to accept the School Board's conclusions as true for purposes of a motion to dismiss for failure to state a claim. *See Iqbal*, 556 U.S. at 678.

In that regard, the School Board cites no legal authority supporting its position that an administrative proceeding initiated pursuant to § 504 constitutes a "civil action" within the meaning of § 1415(l).  Although the School Board's opposition brief cites extensively to court decisions concerning the administrative exhaustion requirement under the IDEA, none of those cases involved the apparently novel issue presented here—*i.e.*, whether a § 504 administrative proceeding is a "civil action" subject to the IDEA's administrative exhaustion requirement.  (*See* Doc. 15 at 12-15; *see also* Doc. 29 at 19-20)  In the absence of any case law directly on point, the Undersigned finds the application of basic canons of statutory construction to be instructive.

"Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006).  The term "civil action" is not otherwise defined within the IDEA.  *See generally* 20 U.S.C. § 1400, *et seq*.  At least one federal circuit court has observed (outside the IDEA context) that the term "'civil action' has a sharply defined meaning in the law." *Key Buik Co. v. C.I.R.*, 613 F.2d 1306, 1308 (5th Cir. 1980) (holding that the phrase "civil action or proceeding" means litigation).[4]  At least one federal district court has concluded (outside the IDEA context) that "the ordinary meaning of 'civil action' is a single proceeding begun with a complaint and continuing all the way through entry of judgment." *Tucker v. Equifirst Corp.*, 57 F. Supp. 3d 1347, 1354 (S.D. Ala. 2014) (citing, *inter alia*, Black's Law Dictionary (9th ed. 2009)).  This is consistent with Fed. R. Civ. P. 2, which states that "[t]here is one form of action—the civil action."  It is also consistent with

---

[4]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Fed. R. Civ. P. 3, which states "[a] civil action is commenced by filing a complaint with the court." Here, the Undersigned concludes that the plain and ordinary meaning of the term "civil action" as used in § 1415(l) refers to a judicial proceeding commenced by filing a complaint in a court. The School Board cites no legal authority to the contrary and the Court need not accept as true the conclusory assertions to the contrary in the School Board's Complaint.

The Undersigned also finds the School Board's interpretation of § 1415(l) to be inconsistent with the basic tenet of statutory construction that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme . . . A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme . . . and fit, if possible, all parts into a harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (internal citations and quotations omitted). "'A [statutory] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—*because the same terminology is used elsewhere in a context that makes its meaning clear*, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.'" *Wachovia Bank, N.A. v. U.S.*, 455 F.3d 1261, 1266-67 (11th Cir. 2006) (emphasis added) (quoting *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004)).

Here, the term "civil action" appears three times in § 1415 under subsection (d)(2)(K) (specifying the required contents of the procedural safeguards notice), subsection (i)(2)(A) (the jurisdictional provision discussed *supra*), and subsection (l) (the administrative exhaustion provision). The use of the same term in both subsection (i)(2)(A) and subsection (l) undermines the School Board's proffered interpretation of the statute. If the term "civil action" were

interpreted to include an administrative proceeding under § 504, then the jurisdictional provision of subsection (i)(2)(A) would make no sense.

To illustrate, if "civil action" were to mean what the School Board argues, then subsection (i)(2)(A) would, in effect, be subject to the following implausible and untenable reading:

> Any party aggrieved by the findings and decision made under this subsection [§ 1415(i)], shall have the right to bring a [§ 504 administrative proceeding] with respect to the complaint presented pursuant to [§ 1415], which [§ 504 administrative proceeding] may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

Such an interpretation would render § 1415(i)(2)(A) nonsensical because, among other things, a § 504 *administrative proceeding* cannot be brought in a *state court* of competent jurisdiction or in a *federal district court*.

Moreover, giving the term "civil action" two different meanings in two separate subsections of a single statute would violate the rule of statutory construction requiring courts to interpret statutes as a symmetrical and coherent regulatory scheme. *See Brown & Williamson Tobacco Corp.*, 529 U.S. at 132. For § 1415 to be internally harmonious, the term "civil action" must be interpreted to mean litigation in court, not an administrative proceeding. This is a conclusion that can be reached as a matter of law based on the plain language of § 1415 and fundamental rules of statutory construction.

Based on the foregoing, the Undersigned finds that the School Board has failed to state a plausible claim upon which relief can be granted because (1) the requirements of § 1415(i)(2)(A) are not met, and (2) the School Board's interpretation of the term "civil action" in § 1415(l) is not plausible as matter of law. Additionally, because the School Board's Complaint fails to state a claim, the Undersigned finds that the School Board has also failed to meet its burden of

showing that federal-question jurisdiction exists.  Accordingly, Defendants' Motion to Dismiss (Doc. 8) is due to be granted.

Because the jurisdictional and pleading deficiencies noted above are dispositive of the Complaint in its entirety (subject to any attempt by the School Board to amend), the Court need not address the remaining arguments raised by the parties in their respective submissions.

The pleading defects outlined above appear to be incurable such that any attempt by the School Board to re-plead its claims would likely be futile.  Nevertheless, out of an abundance of caution, the Undersigned finds and recommends that the School Board should be afforded at least one further opportunity to attempt to amend its Complaint to (1) allege a viable basis for subject-matter jurisdiction and (2) state a claim upon which relief can be granted.

**IT IS RESPECTFULLY RECOMMENDED:**

1) That the Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. 8) be **GRANTED**.

2) That the Complaint (Doc. 1) be dismissed without prejudice.

3) That the School Board be afforded at least one further opportunity to amend its Complaint to (1) state a claim upon which relief can be granted and (2) allege a basis for subject-matter jurisdiction.

Respectfully recommended in Chambers in Fort Myers, Florida on September 30, 2016.


_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties